[Civ. No. 40569. First Dist., Div. Two. Aug. 17, 1978.]

DAISY ENIS, a Minor, etc., Plaintiff and Appellant, v.
SPECIALTY AUTO SALES et al., Defendants and Respondents.

## Counsel

John H. Peterson and Robert A. Seligson for Plaintiff and Appellant.

O'Connor, Cohn, Dillon & Barr and James L. English for Defendants and Respondents.

## Opinion

**ROUSE, J.**—Plaintiff, Daisy Enis, a minor, brought this action through her guardian ad litem to recover damages for personal injuries sustained when she was struck by an automobile. Named as defendants were Louis Eddings, who was allegedly driving the car in a negligent manner at the time of the accident, and Specialty Auto Sales, Ronald Palombino and Stephen Dubose, who were allegedly liable as owners of the vehicle.[1]

A stipulated judgment in the amount of $300,000 was entered in favor of plaintiff and against defendant Eddings, and the case then proceeded to trial against Specialty Auto Sales, Ronald Palombino and Stephen Dubose. The sole question to be determined at the trial was whether the defendants, who had sold the automobile before it collided with plaintiff, nevertheless remained liable as owners of the vehicle because of their failure to give the required notice of transfer of ownership to the Department of Motor Vehicles.

Sometime in May 1972, defendant Stephen Dubose sold a 1966 Buick Riviera to defendant Specialty Auto Sales, a car agency operated by defendant Ronald Palombino. Dubose, who was out of state at the time

---

[1]Levi Phillips and Vince Palombino were also named as defendants in the complaint. However, as far as can be determined from the record, they were no longer parties to the action when it went to trial.

of the trial, did not testify, but his deposition was read into evidence. He stated that at the time of the sale, he gave the certificate of ownership or "pink slip" to Ronald Palombino and that Palombino told him to sign it. Dubose did so, and at Palombino's request, he then signed some transfer papers. Dubose stated that he inquired as to the purpose of the transfer papers, and that Palombino told him that he would send them to Sacramento to take the car out of Dubose's name. Dubose stated that sometime during the week after he sold the car, he filled out a transfer of automobile form which had been mailed to him by the Department of Motor Vehicles with his prior year's license renewal. He claimed that he mailed this form to the Sacramento office of the Department of Motor Vehicles, but that it was his "understanding" that it was never received.

In addition to Mr. Dubose's deposition, his responses to two of plaintiff's requests for admissions were read into evidence. Dubose admitted that the records of the Department of Motor Vehicles indicated that he was still the registered owner of the Buick on September 15, 1972, the date when plaintiff was struck by said car. Mr. Dubose also admitted that when he signed the pink slip and gave it to Specialty Auto Sales, he failed to date it.

Ronald Palombino testified that the car which Specialty Auto Sales had purchased from Stephen Dubose was resold to defendant Louis Eddings at noon on Friday, September 15, 1972. It was later on that same day that Eddings collided with plaintiff. Mr. Palombino testified that it was his usual practice to mail notice of the sale of a vehicle to the Sacramento office of the Department of Motor Vehicles within three working days after the sale of a vehicle. However, plaintiff established that, in connection with seven other automobile sales made by Specialty Auto Sales during the period between September 9 and November 24, 1972, there had been lapses of time varying from 9 to 24 days between the date of the particular sale and the date when the notice of sale was received and date-stamped by the Sacramento office of the Department of Motor Vehicles. Portions of Mr. Palombino's deposition were read into evidence wherein he admitted that he had no specific recollection of when he had mailed notice of the automobile sale to Louis Eddings to the Sacramento office of the Department of Motor Vehicles.

Quinten Peters, manager of the Registration Service Unit of the Sacramento office of the Department of Motor Vehicles, testified that incoming mail is run through a tachometer and date-stamped on the day it is received. In unusual instances, when the Registration Service Unit

received too much mail to run through the tachometer immediately, the mail bags which could not be processed that day were marked with the date on which they were received and segregated in the security room. When the mail was later removed from these bags, it was then run through the tachometer and given the date marked on the mail bags. Mr. Peters testified that September was not a busy month and that it was improbable that there was any backlog of mail at that time. He identified the notice of sale of the 1966 Buick by Specialty Auto Sales to Louis Eddings, and testified that it bore a Sacramento Department of Motor Vehicles tachometer date of September 22, 1972.

Mr. Peters admitted that it was possible that, on occasion, there could be deviations from the Department of Motor Vehicles' date-stamping practices; also, that the Department of Motor Vehicles had received letters complaining that correspondence mailed to it had not been received. On occasion, he had seen letters which were received through the mails by the Department of Motor Vehicles on a particular date but were postmarked with a date some two weeks or more earlier.

Edna Houser, who was in charge of the Information and History Unit at the Sacramento office of the Department of Motor Vehicles, testified that the office was very concerned with stamping the correct dates on incoming mail and that it followed procedures designed to insure accuracy in this regard. She admitted that there were occasions when the Department of Motor Vehicles received mail bearing a much earlier postmark.

At the conclusion of the trial, the jury returned the following special verdict: "1. Did defendants RONALD PALOMBINO and SPECIALTY AUTO SALES mail or deliver to the Department of Motor Vehicles by the end of SPECIALTY AUTO SALES' third business day, after the sale of the Buick to defendant LOUIS EDDINGS, a written notice of the sale on an appropriate form provided for such purpose by the department? 10 YES NO 2 [¶] 2. Did defendant STEVEN DUBOSE place in the United States mail addressed to the Department of Motor Vehicles the notice of transfer or sale as required by California Vehicle Code § 5602(b) and as provided for in § 5900 of said California Vehicle Code? 12 YES NO___"

Based upon this verdict, the trial court found that defendants Palombino and Specialty Auto Sales had fully complied with section 5901, subdivision (a) of the Vehicle Code and that defendant Dubose had

fully complied with section 5900, subdivision (a), of the Vehicle Code.[2] Judgment was accordingly entered in their favor. Following the denial of her motions for new trial and for judgment notwithstanding the verdict, plaintiff filed a timely notice of appeal from the judgment and from the order denying her motion for judgment notwithstanding the verdict.

Plaintiff's first contention on appeal is that the trial court erroneously instructed the jury that she had the burden of proving that defendants had failed to comply with the applicable Vehicle Code sections which require the sending of notice to the Department of Motor Vehicles following the sale of an automobile. Section 5602 provides that "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements: [¶] (a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code. [¶] (b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for registration of the vehicle pursuant to the sale or transfer."

Section 5900 provides, in pertinent part, that "(a) Whenever the owner of a vehicle registered under this code sells or transfers his title or interest in, and delivers the possession of, the vehicle to another, the owner shall immediately notify the department of the sale or transfer giving the date thereof, the name and address of the owner and of the transferee, and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

At the time of the transactions here in issue, section 5901 provided, in pertinent part, that "(a) Every dealer upon transferring by sale, lease or otherwise any vehicle, whether new or used, of a type subject to registration under this code, shall, not later than the end of the third business day thereafter of the dealer, give written notice of the transfer to the department upon an appropriate form provided by it."

---

[2] Unless otherwise specified, all further statutory references are to the Vehicle Code.

Defendants Palombino and Specialty Auto Sales based their claim of compliance with subdivision (b) of section 5602 upon the fact that they had fulfilled the requirements of subdivision (a) of section 5901 by mailing a notice of sale to the Sacramento office of the Department of Motor Vehicles within three business days of the sale. Defendant Dubose based his claim of compliance with subdivision (b) of section 5602 upon the fact that he had fulfilled the requirements of subdivision (a) of section 5900 by mailing a transfer of ownership form to the Sacramento office of the Department of Motor Vehicles.[3]

At the request of Palombino and Specialty Auto Sales, the trial court instructed the jury that the plaintiff had the burden of establishing, by a preponderance of the evidence, that said defendants "did not notify the Department of Motor Vehicles of the sale and transfer of the automobile in question by the end of the third business day after the sale of the automobile." At Dubose's request, the court also instructed the jury that the plaintiff had the burden of establishing, by a preponderance of the evidence, that Dubose did not deliver to the Department of Motor Vehicles or place in the United States mail addressed to the Department of Motor Vehicles the notice as provided for in section 5900, or appropriate documents for registration of the vehicle pursuant to the sale. The court further instructed the jury that, in the event that the evidence was evenly balanced so that the jury was unable to say that the evidence on either side of an issue preponderated, the jury's finding on that issue must be against the party who had the burden of proving it. Plaintiff asserts that the burden of proving compliance with the applicable code sections belonged to defendants rather than to plaintiff, and that the giving of the above instructions was highly prejudicial to her.

Section 17150 provides, in part, that "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle . . . by any person using or operating the same with the permission, express or implied, of the owner." ■ It is settled that, for

---

[3]No other defenses were urged by any of the defendants. Palombino and Specialty Auto Sales produced no evidence nor made any claim that they had complied with subdivision (a) of section 5602 by properly endorsing and delivering the certificate of ownership and delivering the certificate of registration. Likewise, they made no claim that they had complied with subdivision (a) of section 5900 by immediately notifying the Department of Motor Vehicles of the sale of the vehicle and the other required information. It is also clear that defendant Dubose made no claim of compliance with subdivision (a) of section 5602, since there was no evidence that he delivered the certificate of registration to Specialty Auto Sales; also, Dubose admitted that he failed to date the "pink slip" or certificate of ownership.

the purpose of imposing liability under section 17150, the transferor of an automobile continues to be an owner of the automobile unless he complies with the prerequisites to avoidance of liability as prescribed by section 5602. (*Uber* v. *Ohio Casualty Ins. Co.* (1967) 247 Cal.App.2d 611, 615 [55 Cal.Rptr. 720], and cases therein cited.)

Section 500 of the Evidence Code provides, in part, that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Section 5602 provides that an owner who has made a bona fide sale or transfer of a vehicle and delivered possession of same to a purchaser shall cease to be the owner of the vehicle for purposes of civil liability only if he has complied with subdivision (a) of that statute or with section 5900 or 5901. Plaintiff argues that the language of section 5602 suggests that proof of such compliance is essential to the defense of an action brought against the alleged owner of a vehicle and that, in this instance, the defendants had the burden of proof on that issue.

In support of his contention, plaintiff has cited a number of cases which contain statements indicating that compliance with the applicable Vehicle Code sections is an affirmative defense which must be proved by the defendant: *Stoddart* v. *Peirce* (1959) 53 Cal.2d 105, 115 [36 P.2d 774]; *Uber* v. *Ohio Casualty Ins. Co., supra,* 247 Cal.App.2d at p. 616; and *Somerville* v. *Providence Washington Indemnity Co.* (1963) 218 Cal.App.2d 237, 247 [32 Cal.Rptr. 378], all contain language to the effect that strict compliance with the applicable Vehicle Code statutes is necessary in order for a vehicle owner to "escape" liability for an accident occurring before notice of transfer is received by the Department of Motor Vehicles. Similarly, in *Rosenthal* v. *Harris Motor Co.* (1953) 118 Cal.App.2d 403, 405 [257 P.2d 1034]; *Weinberg* v. *Whitebone* (1948) 87 Cal.App.2d 319, 325 [196 P.2d 963]; *Helmuth* v. *Frame* (1941) 46 Cal.App.2d 372, 376 [115 P.2d 846]; and *Guillot* v. *Hagman* (1939) 30 Cal.App.2d 582, 587 [86 P.2d 865], the courts stated that compliance with the applicable statutes was necessary in order for the owner to be "relieved" of liability. Finally, in *Schmidt* v. *C. I. T. Corporation* (1936) 14 Cal.App.2d 92, 94 [57 P.2d 1016], the court stated that the defendant was not "exempt from liability as owner" in the absence of such compliance, and *Brown* v. *Superior Court* (1971) 15 Cal.App.3d 187, 191 [93 Cal.Rptr. 33], contains the statement that compliance with section 5602 is "a condition which must be fulfilled before an immunity . . . can be claimed."

None of these cases dealt with the question of which party has the burden of proof as to the issue of compliance or noncompliance with the applicable Vehicle Code sections under section 500 of the Evidence Code. Plaintiff contends, nevertheless, that it is apparent from the statements made by the courts and from the language of section 5602 itself that compliance with the Vehicle Code sections is an affirmative defense which must be proved by the defendant.

Plaintiff also contends that placing the burden of proof of compliance upon the defendants in this instance is in accord with the principle that where the evidence necessary to establish a fact essential to a claim lies within the knowledge and competence of one of the parties, it is that party who should bear the burden of proving that fact. Thus, in *Baker* v. *Wadsworth* (1970) 6 Cal.App.3d 253, 263 [85 Cal.Rptr. 880], the court held that it was entirely proper for a civil service commission rule to provide that an employee who had been absent from his job for seven consecutive days without authorization had the burden of establishing that his conduct was excusable. The court stated that "The burden of proof is properly on the employee because he is the one who knows the reasons for his absence. Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, it may be necessary to place the burden on the party possessing that knowledge. [Citation.]"

Here, plaintiff established that the Department of Motor Vehicles had not received a timely notice of the sale to Eddings from any of the defendants. She contends that she had no way of determining when the defendants, or any of them, had placed a notice of sale in the mail addressed to the Sacramento office of the Department of Motor Vehicles. She asserts that this fact was one peculiarly within the knowledge and competence of the defendants themselves; hence, that she should not have been saddled by the trial court with the virtually impossible burden of establishing that defendants did *not* place the notice of sale in the mail within the time required under the applicable sections of the Vehicle Code.

Palombino and Specialty Auto Sales[4] argue that, since plaintiff pleaded in her complaint that defendants were the owners of the vehicle which struck plaintiff and defendants responded with a general denial, the burden of proof on this issue was one which plaintiff was required to

---

[4]Dubose elected not to file a respondent's brief.

bear. Defendants also rely upon *Fountain* v. *Bank of America* (1952) 109 Cal.App.2d 90, 94 [240 P.2d 414], as authority for the proposition that where the issue of permissive use of a vehicle is raised in the complaint, the burden is on the plaintiff to prove that at the time of the injury, the vehicle was owned by the defendant and was being used with his permission, express or implied. They assert that the obligation to prove noncompliance with the Vehicle Code sections requiring notice of transfer imposes no greater burden upon the plaintiff than the obligation to prove permissive use of a vehicle; hence, that the plaintiff should have the burden of proof as to both issues.

We are not persuaded by defendants' argument. Ordinarily, permissive use of a vehicle is a fact which can be readily proved by a plaintiff through the testimony of the driver or that of other witnesses who can testify to the use of the vehicle by the driver at the time of the accident or on other prior occasions. Since section 17150 allows for the imposition of liability upon the owner of a vehicle only where the same was used with his or her permission, the fact of permission is one which must be pleaded and proved by the plaintiff.

It is true that ownership, as well as permissive use, of a vehicle is a condition precedent to the establishment of liability under section 17150. Hence, it follows that where, as here, defendants-respondents were not driving the car at the time of the accident and the driver, Eddings, was not their agent, plaintiff could not have stated a cause of action against the defendants without alleging in her complaint that they were the owners of the vehicle. However, such allegation, of necessity, would be based solely upon whatever information plaintiff could obtain from the records of the Department of Motor Vehicles and whatever additional information she could obtain concerning the state of the title of the vehicle and the right to possession of same at the time of the accident. ■ In this case, plaintiff proved that the records of the Department of Motor Vehicles showed that defendant Dubose was the registered owner of the vehicle on the date of the accident; that Dubose had sold the vehicle to Specialty Auto Sales several months prior to the accident; that Specialty Auto Sales had sold the vehicle to Eddings on the day of the accident; and that notice of the latter transaction had not been received by the Department of Motor Vehicles until seven days after the sale. These were facts which plaintiff could and did prove, and when she did so, she sustained the burden of proving the "ownership" allegation of her complaint. She should not have been subjected to the additional burden of proving facts peculiarly within the knowledge of defendants,

namely, that they mailed notices of sale which, for reasons unknown, were never received by the Department of Motor Vehicles (in the case of defendant Dubose) or were not timely received (in the case of defendants Palombino and Specialty Auto Sales). Since the language of section 5602 and the cases cited indicate that compliance with the applicable Vehicle Code sections is a defense which must be proved by the defendant, we conclude that defendants rather than plaintiff should have borne the burden of proving such compliance.

Defendants Palombino and Specialty Auto Sales also contend that, even if the trial court improperly instructed the jury on the burden of proof, plaintiff may not raise this point on appeal because she failed to submit an instruction of her own on the question of the burden of proof and likewise failed to make any objection to the instructions submitted by defendants. In support of·this argument, they rely upon *Valentine* v. *Kaiser Foundation Hospitals* (1961) 194 Cal.App.2d 282 [15 Cal.Rptr. 26].[5]

In *Valentine,* the defendants in a personal injury action contended on appeal that the judgment for the plaintiffs should be reversed because the trial court had erroneously instructed the jury that the presumption of res ipsa loquitur was applicable as a matter of law. The appellate court held that the instruction complained of should not have been given, but that such error was not prejudicial because it was cured by the giving of two other instructions and the plaintiffs' proof was so strong as to be almost overwhelming. The appellate court also stated that it would have had more sympathy for the defendants' position on appeal had they objected to the erroneous instructions submitted by the plaintiffs and had they themselves submitted a correct instruction on res ipsa loquitur. However, the appellate court did not hold, as defendants suggest, that the defendants' omissions in this regard precluded them from raising the point on appeal.[6]

Defendants have been unable to cite any case directly holding that a party who fails to object to an erroneous instruction proposed by his adversary or to propose a correct instruction of his own on the same subject is precluded on appeal from complaining of the giving of the

[5]The *Valentine* case was disapproved on other grounds in *Siverson* v. *Weber* (1962) 57 Cal.2d 834, 839 [22 Cal.Rptr. 337, 372 P.2d 97].)

[6]In *People* ex rel. *Dept. Pub. Wks.* v. *Anderson* (1965) 236 Cal.App.2d 683, 698 [46 Cal.Rptr. 377], the court correctly observed, "The court in *Valentine* did not hold that the failure to object, when under the circumstances objection seemed called for, constituted a waiver. Its holding was that the error was not prejudicial."

improper instruction. While plaintiff might have been able to avoid the necessity for an appeal by taking such steps, her failure to do so did not constitute a waiver of her right to contend on appeal that the instructions given at defendants' request were prejudicially erroneous. It is settled that the giving of an instruction shall be deemed excepted to, even though the party complaining on appeal made no objection thereto in the trial court. (Code Civ. Proc., § 647; *Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232, 241 [102 Cal.Rptr. 547].)

██  The question remaining is whether, in this instance, the giving of the erroneous instructions on the burden of proof was prejudicial to plaintiff. We conclude that it was. Plaintiff produced ample evidence to support a verdict in her favor against all three defendants. In her case against Palombino and Specialty Auto Sales, she established that they sold the Buick to Eddings on Friday, September 15, 1972; that Specialty Auto Sales was open for business on the following day; and that subdivision (a) of section 5901 therefore required that notice of the sale be mailed to the Sacramento office of the Department of Motor Vehicles no later than September 19, 1972, the third business day following said sale. She also established that the notice of sale was not received and tachometer-dated by the Department of Motor Vehicles until September 22, 1972. Defendants attempted to refute this evidence by establishing that human error by Department of Motor Vehicles employees was possible and by producing Palombino's testimony that it was his usual practice to mail the notice of sale to the Sacramento office of the Department of Motor Vehicles within three business days after a sale. On the other hand, plaintiff produced testimony by two Department of Motor Vehicles employees to the effect that the department followed practices designed to insure the accuracy of the date-stamping of incoming mail. Plaintiff also established that on several occasions during the same period of time as the sale to Eddings, Specialty Auto Sales had sold other automobiles and that notice of said sales had not been received by the Department of Motor Vehicles until 9 to 24 days thereafter.

In her case against defendant Dubose, plaintiff established that the Department of Motor Vehicles had no record of ever having received any notice of the sale from Dubose to Specialty Auto Sales. Although Dubose testified, through his deposition, that he had placed such a notice in the mail addressed to the Sacramento office of the Department of Motor Vehicles, this testimony was self-serving in nature and the jury was at liberty to disbelieve it.

Given this state of the evidence, it cannot be doubted that plaintiff was prejudiced by the instructions that she had the burden of proving noncompliance with the applicable Vehicle Code sections and that if the evidence was evenly balanced on a particular issue, the jury was required to find against the party who had the burden of proving that issue. Therefore, the giving of these erroneous instructions requires that we reverse the judgment.

Plaintiff also contends that the trial court erred in denying her motion for judgment notwithstanding the verdict, since the evidence established, as a matter of law, that defendants failed to comply with the applicable code sections.

■ A judgment notwithstanding the verdict may be sustained only when it can be said, as a matter of law, that no other reasonable conclusion is legally deducible from the evidence; that any other holding would be so lacking in evidentiary support that the reviewing court would be compelled to reverse it or the trial court would be required to set it aside as a matter of law. The court is not authorized to determine the weight of the evidence or the credibility of witnesses. (*Spillman* v. *City etc. of San Francisco* (1967) 252 Cal.App.2d 782, 786 [60 Cal.Rptr. 809].)

■ While we agree with plaintiff that the evidence produced by defendants was weak, we cannot say that it was insufficient, as a matter of law, to support the jury's verdict. The question of credibility was one for the jury. They were entitled to believe Palombino's testimony regarding his usual practice of mailing a notice of sale to the Department of Motor Vehicles within three business days after a sale; also, Dubose's testimony on deposition that he had mailed a transfer of automobile form to the Department of Motor Vehicles sometime during the week after he sold the Buick to Specialty Auto Sales. Under these circumstances, the trial court was correct in denying plaintiff's motion for judgment notwithstanding the verdict.

While it appears that, on the basis of the foregoing, we need not consider plaintiff's remaining arguments, yet such discussion might prove helpful in the event of a retrial.

Plaintiff contends that it was error for the trial court to instruct the jurors that they should find in favor of defendant Dubose if they determined that he had mailed to the Department of Motor Vehicles the notice provided for in sections 5900 or 5901 or appropriate documents for

registration of the vehicle pursuant to the sale or transfer. She argues that the reference to section 5901 was improper because that statute applies only to notice by automobile dealers and, in any event, there was no evidence that Dubose sent the type of notice specified in section 5901. She contends that the remainder of the instruction was improper because Dubose failed to establish that he did comply with section 5900 or that he mailed to the Department of Motor Vehicles appropriate documents for registration of the vehicle pursuant to the sale to Specialty Auto Sales.

Plaintiff is correct in her contention regarding the application of section 5901, since Dubose was not an automobile dealer.

The remainder of the instruction given by the trial court was correct and based upon the language of section 5602 to the effect that when an owner has sold a vehicle, he is relieved of civil liability for the operation of such vehicle if he has placed in the mail, addressed to the Department of Motor Vehicles, the notice provided for in section 5900 or appropriate documents for registration of the vehicle pursuant to the sale. Defendant Dubose did produce evidence that he filled out and mailed to the Department of Motor Vehicles a transfer of automobile form which had been sent to him by the Department of Motor Vehicles. Although Dubose was unable to recall precisely what information was called for by this form, it is reasonable to assume that a form issued by the Department of Motor Vehicles would comply with the informational requirements of section 5900. ■ It has been held that there has been substantial compliance with the notice of sale requirements of the Vehicle Code when the seller of the vehicle furnishes the Department of Motor Vehicles, prior to an accident, with information properly identifying the vehicle and all parties to the sale. (*Stoddart* v. *Peirce, supra,* 53 Cal.2d at p. 120; *Richie* v. *Tate Motors, Inc.* (1971) 22 Cal.App.3d 238, 242-244 [99 Cal.Rptr. 223].) The evidence in this instance furnishes sufficient support for a finding that Dubose mailed the necessary information to the Department of Motor Vehicles several months prior to the accident involving plaintiff. Thus, the instruction given by the trial court was proper, with the exception of the reference to section 5901.

Plaintiff contends that the trial court erred in refusing to give her proffered jury instruction to the effect that a letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of the mail, and her second proposed instruction to the effect that the trial court was taking judicial notice of the fact that a letter mailed in

San Francisco will, in the ordinary course of the mail be delivered to a Sacramento address on the day after it was mailed.

It is doubtful that the first instruction requested by plaintiff would have been of any benefit to her in the case against Dubose. Since the evidence established that the notice allegedly mailed by Dubose was never received by the Department of Motor Vehicles, it is difficult to see how the jury would have been aided by such an instruction. It appears that what plaintiff should have requested was an instruction to the effect that proof that no letter was received warrants a finding that it was never posted. (*Jensen* v. *Traders & Gen. Ins. Co.* (1956) 141 Cal.App.2d 162, 164-165 [296 P.2d 434].)

Plaintiff's second proposed instruction has no part in her case against defendant Dubose. Since the evidence established that the notice allegedly mailed by Dubose was never received by the Department of Motor Vehicles, it is of no moment whether a letter mailed in San Francisco normally took two days or ten days to arrive in Sacramento.

On the other hand, in her case against Palombino and Specialty Auto Sales, plaintiff would have benefited by an instruction under section 641 of the Evidence Code, which provides that a letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of the mail. However, she produced no evidence in the trial court that the ordinary mailing time between San Francisco and Sacramento was one day. Instead, she relies upon *Dept. of Social Welfare* v. *Gandy* (1942) 56 Cal.App.2d 209 [132 P.2d 241], in support of this proposition. There, the court relied upon section 1013 of the Code of Civil Procedure and concluded that, since Santa Monica is less than 100 miles from Los Angeles (p. 211), a showing that a document was duly mailed in Santa Monica on a particular date established, prima facie, that the document was received in the Los Angeles office of the addressee on the day after it was mailed (p. 215). In *McBride* v. *Alpha Realty Corp.* (1975) 49 Cal.App.3d 925, 928-929 [123 Cal.Rptr. 270], the court held that section 1013 of the Code of Civil Procedure merely constituted a legislative recognition that strict adherence to procedural time limitations, where an action's parties or attorneys have mailing addresses distant from each other, would often defeat the ends of justice by making compliance with the time requirement difficult, or even impossible.[7]

---

[7]At the time of the conduct which is here involved, section 1013 of the Code of Civil Procedure had been amended to provide that the time within which the adverse party was required to exercise a right or perform an act was extended two days, rather than one,

We are satisfied that *Gandy* provides no authority for plaintiff's contention that the trial court should have judicially noticed the alleged fact that the ordinary mailing time between San Francisco and Sacramento was then one day. If, upon remand, plaintiff wishes an instruction regarding the ordinary mailing time between those two cities, she should produce competent evidence on that subject.

■ Finally, plaintiff contends that the trial court committed prejudicial error in instructing the jury that the date of sale did not constitute one of the three business days referred to in section 5901. We do not agree. The instruction in question was relevant to the defense relied upon by defendants Palombino and Specialty Auto Sales, and it did correctly state the law. (*Brown* v. *Superior Court* (1971) *supra*, 15 Cal.App.3d 187, 191.)

The judgment in favor of defendants is reversed. The order denying plaintiff's motion for judgment notwithstanding the verdict against defendants is affirmed.

Taylor, P. J., and Kane, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 12, 1978.

---

from the date of mailing. (Stats. 1968, ch. 166, § 1, p. 390.) In its present form, that section provides for an initial *five*-day extension of time within which the adverse party may exercise a right or perform an act.