[Civ. No. 20290.   Second Dist., Div. One.   Jan. 10, 1955.]

TRADERS AND GENERAL INSURANCE COMPANY (a Corporation), Respondent, v. PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation), Appellant.

Frank W. Woodhead and Robert E. Morrow for Appellant.

Gibson, Dunne & Crutcher and Leslie G. Turner as Amici Curiae on behalf of Appellant.

W. P. Smith and Henry F. Walker for Respondent.

MOSK, J. pro tem.†—A rehearing was granted in this case in order that we might give consideration to the contention raised for the first time on the petition for rehearing filed by appellant Pacific Employers Insurance Company as to the applicability of section 383.5 of the Insurance Code.

It is well settled that ordinarily new matter will not be considered on a petition for rehearing. (*Dougherty* v. *Henaire*, 49 Cal. 686; *Prince* v. *Hill*, 170 Cal. 192, 195 [149 P. 578]; *Epperson* v. *Rosemond*, 100 Cal.App.2d 344, 348 [223 P.2d 655, 224 P.2d 480].) Criticism of the practice of raising new points in petitions for rehearing was expressed by the Supreme Court as early as 1857 in the case of *Andrews* v. *Mokelumne Hill Co.*, 7 Cal. 330, 334. Although the admonition in *Andrews* is well worth repetition and emphasis, we have considered and shall dispose of the problem on its merits.

The pertinent portion of Insurance Code, section 383.5 reads as follows: "§ 383.5. Contracts of motor vehicle insurance: Definitions: Form and delivery of contract; Violation of section: Purpose. . . .

" '*Owner*' as used in this section means any person who

is named as an insured in such contract of insurance or document, or in a loss payable clause therein, and, whether or not he is named therein, the vendee, pledgor, or chattel mortgagor of a motor vehicle where insurance contracts subject to this section are procured with respect to the motor vehicle by or on behalf of either party to the purchase, pledge or mortgage.''

The definition of ''owner'' is by the provisions of section 383.5 limited to ''as used in this section.'' This is necessarily so, for ''owner'' is variously defined elsewhere in the codes. (For example, see Veh. Code, §§ 66, 67, 402, 176, 177, 716.) If we consider ''section,'' as used in section 383.5, in its broadest aspect, the four included articles (Ins. Code, § 380-§ 449) cover definition and scope, types of policies, insurer's name on policy and warranties. None of the included sections are applicable to the case at hand.

Section 383.5 has as its avowed purpose ''to prevent fraud or mistake in connection with the transaction of insurance covering motor vehicles'' by requiring delivery of the original or a true copy of the policy ''to each owner'' as therein defined. Obviously it is desirable, and the Legislature considered it important enough to enact the requirement in 1941, for the insurer to be obligated to provide a copy of the document, which is described in section 383.5, to the owner, who is described in the same section as virtually every person who could conceivably be affected by insurance coverage.

That the foregoing is the intent of section 383.5 was held in *Frieze* v. *West American Ins. Co.*, 188 F.2d 331. The court there pointed out (at p. 335) ''. . . that the State of California has adopted as the public policy of that State the requirement that the document constituting the original policy or a true copy thereof shall be delivered to each 'owner' in order that fraud or mistake in connection with the transaction of insurance covering motor vehicles be prevented. See section 383.5 *supra* . . . If, as the statute clearly states, the purpose of the requirement that the original policy or a true copy thereof be given the (owner) was to prevent fraud or mistake, we must reach the conclusion that a cardinal purpose of the statute was to acquaint the assured with all of the terms of the contract of insurance as a necessary incident to the prevention of fraud or mistake . . .'' A rehearing in *Frieze* was denied (190 F.2d 381), the court stating it had considered ''the effect of section 383.5.''

The same conclusion was reached in 8 Attorney General's Opinions 358. That opinion was devoted to discussing what activities constitute fraud or mistake, the prevention of which was "the stated purpose of the section," and the regulatory powers of the insurance commissioner in furtherance of the stated purpose of the section.

In only one other case has section 383.5 been considered: *United Pac. Ins. Co.* v. *Ohio Casualty Ins. Co.*, 172 F.2d 836. That case is not particularly helpful, however, since it involved the question of whether a partner unnamed in a policy became an owner by operation of the statute. The court held he did not.

We perceive nothing in the code section relied upon by appellant that extends its application beyond the purpose stated therein: to prevent fraud or mistake by requiring agents or brokers to deliver an original or copy of an insurance policy to each owner, as owner is defined for that purpose only. The section is not sufficiently elastic to be stretched into the area involved herein, nor does it indicate a legislative intent to have it prevail over the dominant authorities cited in our opinion heretofore rendered, which we hereby adopt and which reads as follows:

As the result of a judgment in a negligence lawsuit, Traders and General Insurance Company, a corporation (herein called Traders) and Pacific Employers Insurance Company, a corporation (herein called Pacific) found themselves in disagreement over insurance coverage of the defendants therein found liable. This declaratory relief action resulted.

Scotty G. Harris and John J. Harris were copartners conducting an automobile dealership in Ventura under the fictitious firm name of Harris Motor Company (herein called Harris). Pacific issued its policy of automobile liability insurance to Harris on March 21, 1950. Some time prior to January 10, 1951, Harris acquired and was the owner of a 1950 De Soto coupé automobile.

At approximately 2 o'clock on the afternoon of the 10th of January, Harris entered into a sales contract as conditional vendor with one Inez Shinn (herein called Shinn) as conditional vendee, involving the De Soto. At that time Shinn made the first required payment, signed the appropriate line on the certificate of ownership for transfer by a new registered owner, and thereupon was given possession of the vehicle by Harris. The certificate of ownership was not

delivered to Shinn. No notice of any transfer of the De Soto was given to the Department of Motor Vehicles until January 26, 1951. This was found by the trial court to be "the lapse of an unreasonable length of time following the delivery of said motor vehicle" to Shinn.

At about 7:50 p. m. on the 10th of January, while operating the De Soto, Shinn collided with a vehicle driven by Loren C. Rosenthal and in which his wife Dorothy L. Rosenthal was riding. The Rosenthals sustained personal injuries for which they brought an action in Ventura Superior Court, and obtained a judgment against Shinn and Harris in the sum of $7,313.46. This, except for a reduction of $39.82, was affirmed on appeal. (*Rosenthal* v. *Harris Motor Co.,* 118 Cal.App.2d 403 [257 P.2d 1034].) At the time of this proceeding the judgment was final. It was stipulated that on January 10th the Pacific policy was in full force and effect. Harris was an agent of Traders with power to bind insurance risks, and on that date executed a policy of automobile liability insurance with Shinn as named insured. It was stipulated that the Traders policy was also in full force and effect at the time of the accident.

Traders instituted this declaratory relief action, and as the prevailing party has become the respondent herein. The trial court concluded that at the time of the accident Harris was the owner of the De Soto, and it was being driven by Shinn with the permission of Harris. Based upon that and other conclusions hereinafter discussed, the court entered its judgment against Pacific for 20/21 and Traders for 1/21 of the Rosenthal judgment.

The first contention of appellant is that the court erred in finding that Shinn was driving the De Soto at the time of the accident with the consent and permission of Harris. To the contrary, insists Pacific, by virtue of the contract and operation of law Shinn was the owner and as such was covered solely by Traders.

But the rule is now well settled that a conditional vendor is considered the owner of a vehicle and the conditional vendee is held to be the operator with permission of the owner, where the vendor delivers possession to the vendee and fails to comply with section 177 with reference to giving notice of the transfer prior to the occurrence of the accident. (Veh. Code, §§ 402 and 177; *Guillot* v. *Hagman,* 30 Cal.App.2d 582 [86 P.2d 865]; *Votaw* v. *Farmers A. Inter-Ins. Exch.,* 15 Cal.2d 24, 27 [97 P.2d 958, 126 A.L.R.

538] ; *Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773 [135 P.2d 569] ; *Bunch* v. *Kin*, 2 Cal.App.2d 81 [37 P.2d 744].) In *Gutknecht* v. *Johnson*, 62 Cal.App.2d 315 [144 P.2d 854], the accident occurred the day following the execution of the conditional sales contract and the Department of Motor Vehicles was not notified for six days. The court held the conditional vendor was the owner and liable for the negligent operation by the vendee " 'where he delivers possession of the car to the vendee and fails to comply with section 177 (of the Vehicle Code) with reference to giving notice of the transfer prior to the occurrence of the accident.' " To the same effect is *Leplat* v. *Raley Wiles Auto Sales*, 62 Cal.App. 2d 628 [145 P.2d 350]. And conclusively so far as we are concerned, the same rule was again enunciated in *Rosenthal* v. *Harris Motor Co., supra*, at page 406.

The conditional sales contract between Harris and Shinn provided title was not to pass from the vendor until full payment of the entire contract balance. Even if this were not conclusive, however, Vehicle Code, section 186(a) provides that "No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until" certain requirements have been met, notably notification of the Department of Motor Vehicles, which as hereinbefore indicated was not undertaken until sixteen days after the accident.

■ Pacific concedes there are numerous authorities holding a conditional vendor liable under Vehicle Code, section 402, where there has been noncompliance with the provisions relating to transfer. But, it insists, this is for the protection of innocent third party victims of negligence; in the instant case Traders seeks to relieve itself from contractual obligations by virtue of the fortuitous circumstance that Harris, its own authorized agent, had failed to perform his duty imposed by law relating to transfers. As a result of this conduct, and the provisions of item number 6 in the Traders policy declarations, an estoppel is urged to prevent Traders from denying ownership in Shinn, its named insured. This item reads as follows : "Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile, except as herein stated : No EXCEPTIONS."

Several reasons persuade us the Pacific position is untenable. First of all, we do not read item six as an unqualified concession by Traders that Shinn is the owner of the auto-

mobile. The clause expressly excepts from sole ownership status the relationship resulting from a conditional sale. The added words "no exceptions" do not eliminate the conditional sales relationship, for it is undisputed that the Harris-Shinn transaction was a conditional sale. Even if we must cling to strict semantics, however, we believe the second "except" and "no exceptions" cancel each other, comparable to the manner in which two negatives constitute a positive. Thus in effect the provision reads, "except as to the conditional sale, the vendee is the owner."

Secondly, all applicable law enters into and is a part of every contract by inference (12 Cal.Jur.2d 348), and this is no exception. Since the law (Veh. Code, §§ 402, 177 and 178) makes the conditional vendor the owner, as convincingly noted by the trial court, it would be paradoxical indeed if under these circumstances one is held to be the owner under the law but not under his insurance contract. *Norris* v. *Pacific Indem. Co.*, 39 Cal.2d 420 [247 P.2d 1], upon which appellant relies, does not so hold. In that case the facts revealed that the owner's son, contrary to express instructions, lent the car to the driver, a situation the court determined to be operation without consent.

Thirdly, while Harris was the agent of Traders, it bore that relationship to bind Traders to insurance risks, not to sell or transfer automobiles on its behalf. Thus any omission of Harris in the legal requisites for the transfer of the vehicle is not attributable to Traders on an agency theory.

Finally, as irrefutably pointed out by the trial court, there can be no estoppel here because Pacific in no way acted or changed its position in reliance on anything done by Traders or Harris. The Pacific policy had been outstanding for about 10 months before the Traders binder was issued. A change in position in reliance on another's work or conduct is an essential element of estoppel. Its absence prevents application of the doctrine. (*Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489 [256 P.2d 32], 18 Cal. Jur.2d 406.)

Pacific next contends that its coverage is excess insurance whereas that provided by Traders is primary insurance. Excess insurance has been defined as that which provides coverage only for loss in excess of other valid and collectible insurance. (5 Stanf.L.Rev. 147.)

Condition 12 of the Pacific policy provides:

"12. Other Insurance.

"If the Insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; providing, however, that the insurance under this policy shall be excess insurance with respect to (1) loss arising out of the use of any non-owned automobile . . ." The policy defines an owned automobile as "an automobile owned by the named insured" and a non-owned automobile as "any other automobile."

The first portion of the foregoing condition provides for prorate liability, which has been defined as the apportionment of the loss with other valid and collectible insurance. Under the second portion, Pacific insists it escapes liability, since the policy was for excess insurance on the vehicle which was nonowned by Harris because it was owned by Shinn. However, the major premise of this syllogism falls, for as hereinbefore discussed, no title passed to the conditional vendee from Harris either pursuant to the contract or by virtue of law.

This leaves applicable the prorate provisions of the Pacific policy, which are substantially the same as the prorate clause in the Traders policy. Under these circumstances, argues appellant, since there is overlapping or double coverage the court should compare the "other insurance" clauses of both policies and hold that since Shinn was the primary tort feasor and the named insured in the Traders policy, Traders should be primarily responsible and Pacific liable only for the excess, if any.

Many jurisdictions distinguish between primary and secondary liability and apply excess coverage only to the latter. (*Commercial Cas. Ins. Co.* v. *Hartford Acc. & Indem. Co.*, 190 Minn. 528 [252 N.W. 434]; *Trinity Universal Ins. Co.* v. *General Acc., F. & L. A. Corp.*, 138 Ohio St. 488 [35 N.E.2d 836]; *American Surety Co.* v. *American Indem. Co.*, 8 N.J.Super. 343 [72 A.2d 798]; *Speier* v. *Ayling*, 158 Pa. Super. 404 [45 A.2d 385]; *Zurich General Acc. & Liab. Ins. Co.* v. *Clamor*, (7th Circ.) 124 F.2d 717; *Great American Indem. Co.* v. *McMenamin*, (Tex.Civ.App.) 134 S.W.2d 734.)

But that theory has been expressly rejected in this state. "'This principle cannot apply in California,'" said the court in *Air Transport Mfg. Co.* v. *Employers' Liab. Assur. Corp.*, 91 Cal.App.2d 129, 132 [204 P.2d 647], "'for the

reason that there is no such thing as primary and secondary liability as between a vehicle owner and the operator thereof with permission.' " To the same effect is *Consolidated Shippers, Inc.* v. *Pacific E. Ins. Co.*, 45 Cal.App.2d 288 [114 P.2d 34].

■ Appellant finally urges that the trial court erred in not giving it the benefit of subrogation, pursuant to Vehicle Code, section 402, subdivision (d), which provides ''In the event a recovery is had under the provisions of this section against an owner on account of imputed negligence, such owner is subrogated to all the rights of the person injured or whose property has been injured and may recover from such operator the total amount of any judgment and costs recovered against such owner. . . .'' In its brief appellant contends it has been uniformly held that the insurer of the party who is secondarily liable has excess coverage, and the insurer of the party primarily liable has primary coverage. It cites cases from several jurisdictions, but overlooks California law to the contrary as hereinbefore noted. (*Employers etc. Corp.* v. *Pacific etc. Ins. Co.*, 102 Cal.App.2d 188, 192 [277 P.2d 53]; *Air Transport Mfg. Co.* v. *Employers' Liab. Assur. Corp.*, *supra*; *Consolidated Shippers, Inc.* v. *Pacific E. Ins. Co.*, *supra*.)

Nevertheless, insists appellant, even if Harris was liable as owner, under Vehicle Code, section 402, Harris would be entitled to indemnity from Shinn; as Harris' insurance carrier, then Pacific would be entitled to reimbursement from Traders, which covers Shinn; to prevent this multiplicity and circuity of lawsuits, the trial court should have recognized Pacific's right of subrogation. (*Aetna Cas. & Surety Co.* v. *Buckeye Union Cas. Co.*, 157 Ohio St. 385 [105 N.E.2d 568]; *Central Surety & Ins. Corp.* v. *London & Lancashire I. Co.*, 181 Wash. 353 [43 P.2d 12].) This contention, however, is built upon the erroneous belief that the Pacific policy covered only Harris' liability as owner and did not provide any coverage for the operator, Shinn.

The Pacific policy was not restricted in coverage to the named insured. The insured to whom coverage was granted included not only the named insured but also any person using an automobile covered thereby with permission of the named insured. As operator of the De Soto with the permission of the owner Harris, Shinn was expressly included as an insured under the Pacific policy.

There is no question of the accuracy of the court's com-

putation, since counsel conceded in open court that the prorate distribution of financial responsibility, if found to be appropriate, is 20/21 against Pacific and 1/21 against Traders. The judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1955. Schauer, J., was of the opinion that the petition should be granted.